The next case is Multimedia Technologies v. City of Atlanta, Georgia. Craig Kunkes is here for the appellant, Multimedia. And Meredith Germain is here for the City of Atlanta. And once you're ready, Mr. Kunkes, you may begin. Are you all ready? May it please the Court. My name is Craig Kunkes. I'm here with my partner, Richard Robbins, and we represent Multimedia Technologies, Inc., which I refer to as Multimedia. The president of our clients, Mr. Anderson, is in the courtroom as well today. The central question in this appeal is whether Rooker-Feldman deprives the District Courts of subject matter jurisdiction over Multimedia's constitutional challenges to enforcement actions that are initiated by the City after a Superior Court order is entered, even though the underlying Superior Court order was limited to determining the validity of 2019 conversion permits that are not at issue in the Federal Court lawsuits before the District Courts. The answer to this question is no, pursuant to clear precedence by this Court and the U.S. Supreme Court. Before we get to Rooker-Feldman, I'm interested in jurisdiction. The Court certified this appeal under Rule 54B. The cornerstones of that rule are the considerations of judicial administration and efficiency, but the Court didn't make any reference to those issues or those reasons. Do we review the certification de novo then without deferring to the District Court? About whether Rule 54B is proper? Yes. Yes, I do believe we review it de novo, but I also believe that jurisdiction is proper here because the District Court dismissed all of Multimedia's claims in its summary judgment order, and there's no risk of this issue coming up again or repeating itself. Multimedia was the only one of the plaintiffs who was a party to the underlying Superior Court case. It's the only party that Rooker-Feldman could possibly apply to, and the District Court stayed the underlying proceedings pending this appeal. Yes, but that's what is suspicious to me is if the District Court would have just gone ahead with the proceedings below, then wouldn't we be able to handle this all in one big appeal? I don't believe something that the District Court did was wise because Multimedia's claims were the same as the claims of the other plaintiffs. It was the same? Multimedia and the other plaintiffs are all asserting the same claim. That's exactly my point. So why doesn't the District Court just rule on everybody's claims? Well, because the District Court dismissed Multimedia's claims for subject matter jurisdiction. Yeah, so the District Court has decided to make us handle more appeals so the District Court doesn't have to adjudicate its claims. Well, I can't speak for why the District Court did that. Well, I'll tell you why. We're having to do more appeals. But Multimedia dismissed all Multimedia's claims and Multimedia stopped, no longer has anything pending. Let me ask you this. If we affirm the District Court, does the District Court still have to adjudicate the claims that are pending with the other parties? With Mr. Anderson and Peach? Right. If we reverse the District Court, does the District Court still have to adjudicate the same claims? In addition to that Multimedia's claims? Yes. So how is this a situation where there's a reason why there needs to be an intermediate appeal of those claims? I mean, if the District Court denied the other parties' First Amendment claims, wouldn't that mean the District Court would deny your claims as well? Possibly. There's different types of standing arguments. There's potential for other concerns to be raised while we disagree with it. There's going to be different preclusion analysis. There's going to be different abstention analysis. Different parties sit in different places in this case. This is the last question I'll ask about this. I'm trying to figure out. The way I understand 54B is you have to have two things. You have to have a final judgment. I think you've got that. You've got a final judgment. Then there has to be no just reason for delay. And I think our case law says that no just reason for delay means something beyond just the normal, well, one party would be happy to have an appeal right now. What is the special thing about this case that provides no just reason for delay? The reason why there's no just reason for delay is that Rooker-Feldman can only possibly apply to multimedia because it was the only party that was involved in the underlying Superior Court case. I said that was the last question, but I lied. So here's the response to that. I mean, isn't that the situation whenever somebody's going to get dismissed? Because whenever you're going to get rid of one party and leave the rest of the parties, the reason you're going to get rid of that one party is because of an issue that just applies to them. If it applied to everybody, then you just enter a final judgment as to everybody. Right. But here's the difference is there's no risk of duplication because of what the standards, the constitutional standards, excuse me, the Supreme Court precedent on Rooker-Feldman is you have to be a party to the underlying case. Here there's no risk of duplication, which is one of the big considerations for the court because multimedia was the only party in the underlying case. And then here the risk is if the court doesn't take the appeal now, however, let's say the district court rules against Mr. Anderson and Peach in the underlying case, they're going to be appealing the constitutional grounds, but multimedia will be stuck appealing the Rooker-Feldman grounds. And it's possible that the court has to repeat the trial for multimedia separately for them. Did the district court say all of that? Did the district court give reasons why there's no just reason for delay? I don't see anything in its rules. So does the orders specify that? You're saying this, but the district court didn't say that. I think the reasoning is implied when the district court was separating out that it believed that there's potential overlap, but it recognized that Mr. Anderson and Peach were not parties to the underlying Superior Court case. So the idea of having multiple trials, like I think that's interesting, but the district court didn't rule on the summary judgment motions pending with the other parties, right? That's correct. So the district court hasn't decided that there's going to be a trial with respect to the other parties. That's correct. So, I mean, for all we know, the district court, as soon as we reverse, the district court already has a summary judgment order ready to grant summary judgment on all the claims that are pending. But if summary judgment is granted, it will be granted on a completely separate issue from Rooker-Feldman. Yeah, yeah. Then the issue doesn't come before the court, just the underlying constitutional question, the First Amendment question. Yeah, but you could raise, but no, but see, that's the thing. If the district court granted summary judgment either way, for either side, you know, you can raise your merits arguments on appeal, even if the district court rules against you on Rooker-Feldman. I mean, if you've got a pending, if you're not limited on appeal to just arguing that the reason why the district court ruled against you is wrong, I mean, you're going to have to address the other reasons that the district court could have ruled against you, too. Right? And that, again, only applies to multimedia. It does not apply to the other points in the case. Here, I think it makes sense for efficiency purposes for the court to address this unique issue that only applies to this one plaintiff before the court deals with the broader constitutional issues that will potentially come up when the district court rules on those. So if we're able to entertain the merits, having decided that we have appellate jurisdiction, tell me why these constitutional claims could not have been raised in state court. These constitutional claims could not have been raised in state court because of the unique procedural posture of the state court case. In that case, two non-parties, private citizens, challenged a ruling by the Atlanta Board of Zoning Authority issuing conversion permits to multimedia. It's not because it would have conflicted with your client's interest in the Georgia court because of their ability to get their conversion permit that the signs were lawfully in place at some point? I don't believe that's why. The multimedia had no opportunity to raise cross-claims against the city in the posture of that case because that case is up on appeal pursuant to OCGA Section 541, which is an appeal procedure for appealing decisions by inferior bodies acting like judges. And you can only bring a declaratory judgment or injunctive relief claim against the city. The city and multimedia were both defendants in the underlying case. They were not adverse to each other at any point. Multimedia can't seek declaratory judgment or injunctive relief against the non-parties who brought the appeal. But most importantly, even if multimedia could have raised the constitutional issues down below, that is not the center of the Rooker-Feldman analysis. What the Rooker-Feldman analysis focuses on is whether multimedia is asserting independent claims that are separate and distinct. And here, multimedia is because it's not seeking to get a conversion permit reinstated. Instead, it's challenging the city's enforcement actions and it's not seeking to overturn or modify the decision by the city courts. The focus, we've said, in Bayer v. Campbell is on the relief requested. Wyatt, are you requesting different relief in federal court than you requested in state court? Multimedia doesn't request any relief in state court. Multimedia was a defendant's insertiory to an appeal brought by two non-parties. And yes, we are requesting different relief. We're seeking to enjoin the enforcement actions by the city. And the reason why that's different, and it's important too because I want to quote some language from Bayer, where first, Bayer points out that Rooker-Feldman is not intended to substitute for claim or issue preclusion analysis. It certainly is not intended to be broader than claim or issue preclusion analysis. That's important here because neither claim nor issue preclusion can apply to multimedia because multimedia and the city are not adverse to each other, which is a requirement for claim or issue preclusion under Georgia law. Second, the Bayer court expressly said, Rooker-Feldman, and I'm quoting here, does not block claims that require summary consideration of a decision of a state court if the plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party. Here, the only ultimate judgment by the Superior Court was that the conversion permits were invalid. Now, the court applied broad reasoning as to how it got there, but it only had jurisdiction to overturn the conversion permits. Well, if the district court were to rule that applying the 1982 sign code to remove your signs was unconstitutional, would that effectively nullify the Superior Court's judgment setting aside the conversion permits? It does not. Multimedia is not seeking to reinstate the conversion permits. Multimedia recognizes that the Superior Court judgment on that is final. Now, one thing where we disagree with the district court analysis is the district court opined as to what would happen if it granted our relief, and it said, well, Multimedia could then potentially apply again in the future for a permit which would effectively nullify the district court's. We disagree with that. Nothing in the district... Sorry, we should nullify the Superior Court ruling. Nothing in the Superior Court order prohibited Multimedia from applying for permits again in the future. All the Superior Court order did was say that these 2019 conversion permits are invalid. They will always be invalid. We're never seeking to reinstate them. Now, what we are seeking to do is prevent the city from bringing improper enforcement actions based on unconstitutional statutes, and in the future, if Multimedia does elect to apply for a permit again in the future, that does not nullify the Superior Court ruling. It's not seeking to reinstate the 2019 conversion permits. And I also want to point out, to just clarify all your questions, a quote from Skinner v. Switzer, a 2011 Supreme Court decision. I'm quoting this language again. If a federal plaintiff presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or related question was earlier aired between the parties in state courts. That's the end quote. The ultimate question is whether the plaintiff presents an independent claim. And here we are. We are only focusing on what the city did after the order. And it's notable that it's undisputed and recognized in the District Court order that nothing in the Superior Court order required the city to take any enforcement actions, nothing in the Superior Court order ruled on the constitutionality of the 1982 sign code, and nothing in the Superior Court order ruled on the validity of the original permits issued for the signs. All right. You've reserved some time. Thank you, Mr. Kunkes. We'll hear from Ms. Germain on behalf of the City of Atlanta. I note that the City of Atlanta violated the rules of appellate procedure by failing to include a jurisdictional statement in its brief. I apologize, Your Honor. I did not realize that. The city also failed to respond to the jurisdictional issue raised by the court. May it please the court. My name is Meredith Germain. I represent the City of Atlanta. Yes, Your Honor, I believe when we were detained to represent the city at this time, the time to respond to that question had passed, and I apologize that we didn't file a response, but we actually conceded and agree to what multimedia argued, that this court does have jurisdiction. With respect to the district court's order regarding the Rooker-Feldman doctrine, it's the city's position... Okay, okay, you can't just say that and then just skip ahead. I mean, on what conceivable basis does this meet the 54B standard? Your Honor, we believe it meets the standard because it was a final judgment. No question about that. And it dismissed all multimedia's claims as well as there is no just reason for delay. Okay, why? Agreeing with multimedia's argument that if the case were to go forward without multimedia and then after the trial... Why is there going to be a trial? Did the district court rule in the summary judgment motions? Aren't the summary judgment motions still pending? Yes, they're still pending. Okay. Why is there going to be a trial? Didn't you file a summary judgment motion? Yes. So you're asking the district court to not have a trial, right? Well, actually, the city did not file a motion for summary judgment. It was just multimedia. Oh, they're asking for not to have a trial. Okay. You want to have a trial? Yes. Okay. Hasn't the city of Atlanta agreed to stay the arrest citations pending the outcome of the case? Yes, Your Honor. So what particular danger of hardship or injustice is there to any of the parties if we don't hear the appeal, if we have no jurisdiction? We believe that the danger is that we will end up having to have two separate trials. If the Rooker-Feldman Doctrine is deemed to apply and multimedia's claims are dismissed, then there would be no harm. However, if the Rooker-Feldman Doctrine doesn't apply and that decision isn't decided until after a trial against Anderson and Peach, then effectively the city would have to go through two separate trials. But see, isn't that the case when, I mean, that's literally every situation where a district court says, like take a statute of limitations, right? You've got three plaintiffs, a statute of limitations applies to one of them that doesn't apply to the other two, and the district court gets that plaintiff out before the trial, right? And there's a final judgment as to that plaintiff. That happens, you know, probably a hundred times a day in the circuit. Are we going to have to hear interlocutory appeals in every single one of those cases? Because, yeah, you know, if that statute of limitations ruling was wrong, then there would have to be another trial. No, but I think the Rooker-Feldman Doctrine is such a narrow and limited scope that we would much rather this court decide that issue now. So is that the standard, is what the parties want courts to do? Is that the standard? Okay, well, then that's what I'm trying to figure out. Like, what is special about this case that just isn't in the mind run of cases? I mean, you know, it seems to me that the more efficient thing to do would be for the district court to just go ahead and resolve everything and then send it up here. Why is that not the most efficient thing to do? I can't speak for the district court because they made this motion sui sponte on their own, dismissing on the basis of Rooker-Feldman. However, we do believe that this court does have jurisdiction. On Rooker-Feldman, you know, we've said that Rooker-Feldman is very narrow, that it's merely a way of ensuring that federal courts aren't reviewing state court judgments. And we've said that anything kind of beyond that needs to be handled by collateral estoppel and res ficata and other sort of preclusion doctrines. Why is this a case of Rooker-Feldman and not just a case of issue preclusion, a claim preclusion? We think that this is a case for Rooker-Feldman because the ultimate question deciding if Rooker-Feldman applies is whether resolution of each individual claim requires review and rejection of the state court judgment. And it's our opinion that the claims made by multimedia in the district court complaint, specifically for declaratory judgment, permanent injunctions, specifically go against the state court order in this case. But did the state court adjudicate first amendment claims? No, Your Honor, the state court did not. However, the state court's order specifically, if we look to the state court order, it is appendix page 560. It specifically holds that the signs were unlawful at inception and illegal under the current zoning regulations and not legal nonconforming signs for which this city should have issued conversion permits. Before Judge McBurney's ruling, multimedia and the city both took the position that these were legal nonconforming signs. However, the state court did an analysis and determined that these were not legal nonconforming signs and they were, in fact, illegal signs. And that was the main conclusion of the state court's order. And they went into an analysis of that looking back at the 1982 sign code, which right now, the 1982 sign code has been amended and repealed. So the constitutionality of that sign code is actually moot now. It's not relevant to an inquiry. If you look at their complaint, they are seeking not only a declaratory judgment that the 1982 sign code is unconstitutional and enforceable, they also want a declaration that the city cannot retroactively apply it against multimedia to claim that the subject signs were not lawfully erected. That goes directly against the Superior Court order, which held that these signs were illegal and they never were valid. How could they have raised the First Amendment and Fourteenth Amendment claims in the Superior Court? I believe that they could have raised constitutional claims saying that the sign ordinance was unconstitutional. They could have raised it before the BZA. Multimedia appeared before the BZA. Along with the city and the aggrieved neighbors who were opposing the conversion permits. How could they have raised it in the Superior Court? On appeal, the enumerations of error that the aggrieved neighbors filed, they challenged and stated that the 1993 permits were unlawful under the 1982 sign ordinance. I think that they could have raised an affirmative defense and argued that the sign ordinance was unconstitutional from 1982. Those arguments could have been raised. However, they didn't. They took the position from day one when they appeared before the BZA and the Superior Court that the 1993 permits were valid and that once the 2015 sign ordinance was passed and amendments were made, then it became a legal nonconforming sign. So just go back to that. I mean, so I just, I get, I get. I think Judge Wilson raises a good point, which is I'm not sure that this even could have been litigated. But my more fundamental issue is, is this really a Rooker-Feldman thing? I mean, that they could have conceivably raised something in state court and they could have gotten a ruling on it from state court? I mean, isn't the question under Rooker-Feldman, is the federal court reviewing a judgment that the state court entered? And so I guess that's my, just go back to that. I mean, it seems like what you're arguing is really something more like claim preclusion or something like that that should be adjudicated under those doctrines. They could have raised this. It's something that arises from the same, you know, nucleus of operative fact, those kinds of things, and not about, like, our jurisdiction to review a state court judgment. Well, I do believe that the Rooker-Feldman doctrine does apply here. Because essentially, if a state court loser, in this case, multimedia, is complaining about injuries caused by a state court judgment, and that is what they are complaining about here. Because if the signed ordinance of 1982 is deemed unconstitutional, their permits are legal. That puts the city in this position where they have a state court order that the signed permits are illegal, and these signs are illegal as they stand. But aren't they on different grounds, though? I mean, I guess that's my point, is that it often is the case that something is legal under state law, you know, and the federal constitution trumps that, and so it's illegal under federal law. How is that any different than what they're asking for here, is that the state court has adjudicated these state issues and said, you know, you've got to do one thing, but they've got a federal claim, and now they're saying, you know, we don't have to do that because we've got this federal claim that preempts the state law. How is this different than that? I think this is different because, number one, also the 1982 signed ordinance is no longer in existence as it was back then. It was repealed and amended in 2015. And the 11th Circuit has repeatedly held that the repeal or amendment of an allegedly unconstitutional statute moots legal challenges to the legitimacy of the repealed legislation. That was found in National Advertising Company v. City of Miami. And here, I think Roper Feldman and our position is that they are attacking the Superior Court order and they're masking it as a claim against the 1982 signed ordinance, which that argument is moot. And if you can see, they keep claiming in their district court complaint that we are retroactively applying the 1982 signed code to them, when, in fact, that is not what the city is doing. When the city sent out the zoning verification letter to Multimedia after their appeals were denied by the Court of Appeals and the Georgia Supreme Court, specifically the zoning verification letter, which can be found, it's Exhibit 6 to the complaint, stated, this letter will serve as official zoning correction notice pursuant to City Code Section 16-30.001 that the two signs have been determined to be illegal, nonconforming signs per City Code 16-28A.013A2, as ruled by Judge McBurney's final order from the Superior Court of Fulton County. As such, the two signs are now out of compliance and must be removed. Upon the final order, rendered on December 10, 2019, the signs are unlawfully erected and displayed to the general public on the existing structure. Then it goes into discuss how these signs were appealed. The Court of Appeals denied, and so did the Georgia Supreme Court, and they did not appeal that ruling to the United States Supreme Court. So the city is now left with this order from the state that these signs are illegal. The only reason that Multimedia is bringing these claims in federal court is to deem their signs legal, which is in direct conflict with the state court order, and they're doing it because they want their signs to be legal. They're not asking for monetary damages. They're asking for a declaratory judgment that we can't enforce this order against them. That's essentially what they're asking. It's also the city's position that they had a reasonable opportunity to present all of their arguments and on this basis we ask that the district court's order dismissing on the basis of Rooker-Feldman be affirmed. Thank you, Ms. Germain. Thank you. I wonder if you would just focus on that last statement that Ms. Germain made, that you could have raised this claim in the Superior Court and you didn't. There's a case that's cited in the briefs. It's Powell v. Powell. It's a 1996 11th Circuit decision, and we said the analysis, the Rooker-Feldman analysis, focuses on opportunity to raise the federal claim, not whether the party actually raised the federal issue. Why aren't we bound by our precedent in Powell v. Powell? Thank you for that question. In response, that 1996 decision was pre-ExxonMobil where the U.S. Supreme Court redefined the contours of Rooker-Feldman and stated that Rooker-Feldman only applies to scenarios that were brought in the Rooker case and the Feldman case, and that this court has adopted that Supreme Court precedent since then. In fact, this court has made an effort to narrow its prior Rooker-Feldman jurisprudence since then. The question raised in the Powell court that you raised... What's the name of the Supreme Court case? ExxonMobil. It's in 2005. It's verse... I can give you the full citation in a second. Is it in the brief? Yes. Okay. And so we no longer look at whether or not you could have raised the federal claim in Superior Court? That's correct. That's correct. As Judge Brasher referenced, is what the preclusion analysis focuses on, and this court and Supreme Court have made clear that Rooker-Feldman is not meant to supplant, amend, or modify a preclusion analysis. Instead, it's meant to prevent a state court loser from seeking to overturn or modify a state court judgment, and that's it. That's it. In fact, in there, this court stated that Rooker-Feldman is a narrow jurisdictional doctrine which will almost never apply. In fact, it's telling that all the cases relied on in the city's brief were all pre-Behr. They cited to Behr, but they don't have any cases after the Behr decision. The Behr decision in 2021 was an effort by this court to bring our Rooker-Feldman analysis in line with the Supreme Court's precedent in the ExxonMobil case from 2005 and to adopt the narrow confines of Rooker-Feldman that the Supreme Court requires us to do. That's it. Thank you. All right. Thank you, counsel.